## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| In re:<br>**Gregory E. Carlson**<br>and<br>**Antoinette D. Carlson,**<br>Debtors. | )<br>)<br>)<br>)<br>)<br>)<br>) | **Bankruptcy No.  14-81783**<br><br>**Adversary No.  14-96130**<br><br>**Chapter 7** |
| **Michael W. Raridon,**<br>Plaintiff<br><br>v.<br><br>**Gregory E. Carlson**<br>and<br>**Antoinette D. Carlson,**<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Judge Lynch** |

### MEMORANDUM OPINION

The Debtors Gregory and Antoinette Carlson move to dismiss the adversary complaint of Michael Raridon. In his pleading, Mr. Raridon alleges that he was appointed the guardian *ad litem* for the minor grandchild of the Debtors. He asks this court to determine the pre-petition judgment awarded him by the state court for his services as guardian to be a domestic support obligation that is excepted from discharge under Section 523(a)(5) of the Bankruptcy Code. For the reasons set forth below, the Debtors' motion to dismiss will be granted.

### JURISDICTION AND PROCEDURE

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Matters concerning "determinations as to the dischargeability of particular debts" are "core proceedings" under 28 U.S.C. § 157(b)(2)(I). Because such matters "stem[] from the bankruptcy itself," this court has constitutional and statutory authority to enter a final order in

this proceeding. *Stern v. Marshall*, 546 U.S. 500 (2011).

## DISCUSSION

A.        <u>Rule 12(b)(6) Standards</u>.

"To survive a motion to dismiss under Rule 12(b)(6), the complaint need contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)).  In order to do so the complaint must describe the claim in detail sufficient to give the defendant fair notice of the plaintiff's claim under Fed. R. Civ. P.8(a). *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Further, it "must give enough factual information to 'state a claim to relief that is plausible on its face.'" *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 547).  In other words, a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (internal citation omitted).  For purposes of a motion to dismiss under Rule 12(b)(6) the court "must accept as true all factual allegations in the complaint." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015).  On the other hand, a plaintiff "can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law." *O'Gorman v. City of Chi.*, 777 F.3d 885, 889 (7th Cir. 2015).

Section 523(a)(5) excepts from discharge any debt "for a domestic support obligation." 11 U.S.C. § 523(a)(5).  The Bankruptcy Code defines a "domestic support obligation" to be a debt that is:

(A)      owed to or recoverable by--
(i)      a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
(ii)      a governmental unit;

(B)    in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C)    established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

    (i)    a separation agreement, divorce decree, or property settlement agreement;

    (ii)    an order of a court of record; or

    (iii)    a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D)    not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

*Id. at* § 101(14A). The code neither contains an explicit reference to grandchildren of a Debtor nor defines "child."

B.    <u>The Complaint</u>.

The facts alleged in the complaint and the court orders attached to it are few in number but specific enough to provide the Debtors with fair notice of Mr. Raridon's claim. According to the Plaintiff's "Complaint to Determine Dischargeability," the Debtors filed a pre-petition Petition for Guardianship of their minor granddaughter in the Illinois Circuit Court for the Seventeenth Judicial Circuit (Winnebago County). (Compl. ¶ 5, Sept. 25, 2014, ECF No. 1.) The Plaintiff in this case, an attorney, alleges that the state court appointed him the minor's guardian *ad litem* pursuant to an Order dated May 23, 2011. (Compl. Ex. A.) The state court approved Raridon's petition for fees "for his services" at the conclusion of those proceedings, awarding him "a judgment in the sum of $3,859." (Compl. Ex. B.) The judgment was entered "jointly and severally" against both Debtors together with Jeremy Jones, "the father of said minor child." (Compl. ¶ 6.) The judgment has not been satisfied and remains due in its entirety. (Compl. ¶ 7.) Based on these allegations, the Plaintiff "submits" that the judgment debt is in the nature of

support "and ... as such, ... is non-dischargeable." (Compl. ¶ 8.)

The Carlsons argue that because the state court proceeding was admittedly for guardianship of the Carlsons' granddaughter—and not their child—the debt is neither owed to nor recoverable by a spouse, former spouse, or child of the Debtors or such child's parent, legal guardian, or responsible relative. They further argue that this debt is not in the nature of alimony, maintenance or support of such spouse, former spouse or child of the Debtors or the child's parent. Accordingly, they contend that the debt owed to the Plaintiff is not a domestic support obligation covered by Section 523(a)(5).

     *i.*      *Fees Owed to a Guardian Ad Litem.*

As a preliminary matter, the court notes that the Carlsons do not argue that the debt owed to Mr. Raridon cannot constitute a domestic support obligation because *Mr. Raridon* is not a spouse, former spouse or child of the Debtors. The Seventh Circuit has stated that "Section 523(a)(5) has not been read literally by the courts [and] awards of attorneys' fees for services in obtaining support orders have been held nondischargeable even though the attorney is neither a spouse, a former spouse, nor a child of the debtor." *In re Rios*, 901 F.2d 71, 72 (7th Cir. 1990) (citing *In re Spong*, 661 F.2d 6 (2d Cir. 1981)). As explained by the court, the "theory is that the spouse's or child's expenses of collection are part of the underlying obligation." *Id.*

Most courts within the Seventh Circuit that have considered this issue have held that fees awarded in favor of a guardian *ad litem* and incurred in a custody dispute involving the debtor's child may constitute domestic support obligations, similar to an award of fees owing to the attorney of a debtor's ex-spouse. *See, e.g., Wischmeyer v. Bobinski (In re Bobinski)*, No. 2:15-CV-085-JD, 2015 WL 9094054 (N.D. Ind. 2015); *Levin v. Greco*, 415 B.R. 663 (N.D. Ill. 2009); *In re Anderson*, 463 B.R. 871, 875 (Bankr. N.D. Ill. 2011). Two bankruptcy court cases within

the circuit reached a different conclusion, interpreting Congress' 2005 amendments to the Bankruptcy Code's re-location of the statutory definition of "domestic support obligation" to a new, more detailed sub-section 11 U.S.C. § 101(14A), to indicate an intent to limit the definition to debts owed directly to the specifically enumerated categories of payees found in paragraph A of the statute. *Levin v. Greco (In re Greco)*, 397 B.R. 102 (Bankr. N.D. Ill. 2008); *Wischmeyer v. Bobinski (In re Bobinski)*, 517 B.R. 900 (Bankr. N.D. Ind. 2014).[1] However, both *Greco* and *Bobinski* were reversed on appeal on that point. The reviewing courts found that the weight of authority, including *Rios*, support finding that Congress intended to include debts owed to a guardian *ad litem* in its provisions for domestic support obligations. *Greco*, 415 B.R. 663; *Bobinski*, 2015 WL 9094054. In any event, this court need not decide the issue of legislative intent. Even if for purposes of Section 523(a)(5) a debt owed to a guardian *ad litem* can constitute a debt owed to or recoverable by the child he or she represented, the complaint does not plausibly aver the debt alleged was incurred by a "child" of the Carlsons within the meaning of the statute.

> ii.    *The Carlson's Granddaughter Is Not Their "Child."*

Nowhere in the complaint is it alleged that the Plaintiff acted on behalf of a "child" of the Carlsons. Rather Mr. Raridon admits that the state court appointed him the guardian *ad litem* of "MLC-L, a minor and *granddaughter* of the Defendants [the Carlsons]." (Compl. ¶ 5 (emphasis added).) The complaint limits its use of the term "child" to the separate identification of a parent: "Jeremy Lones, father of said minor child." (Compl. ¶ 3.) The complaint does not suggest that Mr. Lones, the co-respondent, is the Carlsons' son, and does not suggest that the

---

[1] The bankruptcy court in *Greco* also held that a guardian *ad litem* did not constitute a "legal guardian" as the term is used in the post-BAPCPA definition of "domestic support obligation." *But see Rackley v. Rackley (In re Rackley)*, 502 B.R. 615 (Bankr. N.D. Ga. 2013) (criticizing *Greco*'s definition of "legal guardian" and finding that a guardian *ad litem* appointed under Georgia law in a custody dispute constituted a "legal guardian" for purposes of Section 101(14A) and 523(a)(5) of the Bankruptcy Code).

grandchild's natural parents are deceased.[2]

As noted above, the Bankruptcy Code does not define the terms "child" or "child of the debtor."[3]  In the absence of an express definition, a term contained in a statute should be given "its ordinary meaning." *Clark v. Rameker*, 134 S. Ct. 2242, 2246 (2014).  The word "child" in isolation may refer generally to any youth or minor. *See, e.g.,* BLACK'S LAW DICTIONARY (10th ed. 2014) (listing as first definition of the word "Child" an "unemancipated person under the age of majority").  But a "child of" someone usually only refers to that person's son or daughter, not grandchild. *Id.* ("4. A son or daughter."). *See also, "Child" Definition*, OXFORD ENGLISH DICTIONARY (2013) [hereinafter OED], http://www.oed.com/view/Entry/31619?rskey=3RZ7s1&result=1 (last visited Jan. 20, 2016) (defining the noun when used as a "correlative to parent," to be the "son or daughter (at any age); the offspring of human parents" under the ninth definition). To be sure, the OED's eleventh definition given for the noun recognizes that its plural form may include, in some contexts, broader derived or biblical uses, such as "descendants; members of the tribe or clan." OED (giving as an example: the biblical "Children of Israel").  However, in most contexts the "legal construction of the word 'children' accords with its popular signification, namely, as designating the immediate offspring." *Adams v. Law*, 58 U.S. 417, 421 (1854). *See also Moreno-Morante v. Gonzales*, 490 F.3d 1172 (9th Cir. 2007) (rejecting the argument that a grandchild qualifies as a "child" under 8 U.S.C. §1229b(b)(1)(D), and additionally rejecting the

---

[2] Indeed, Exhibit A, the state court's May 2011 Order that is attached to the Complaint, suggests that the grandchild's mother is alive, describing her to be "the Respondent mother of the minor."  While factual allegations outside the complaint are not considered for the ruling on the Rule 12(b)(6) motion, *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006), the court acknowledges that Mr. Raridon's subsequently filed a Memorandum of Law that attaches a purported copy of the Carlsons' initial petition in the guardianship proceedings. (Pl.'s Mem., Feb. 13, 2015, ECF No. 15.)  This document, dated May 2, 2011 states in that the grandchild's mother "is Holly Anne Carlson, who is over eighteen years of age and a resident of Rockford, Illinois" and that she is "unwilling and unable to carry out day to day child care decisions for the Respondent minor." (Id. Ex. A.)

[3] Perhaps the closest defined term is "relative," which is defined as an "individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree." 11 U.S.C. §101(45).

suggestion that the grandchild was a "*de facto* child"). *See also*, Restatement (First) of Property § 267, cmt. c (1940) ("The word 'children' is normally used to denote issue of the first generation only.")

Congress has recognized some form of exception to discharge for child support debts since at least 1903 when it amended the Bankruptcy Act of 1895 to add an express exception for a debt due or to become due for alimony or for the maintenance or support of wife or child. *Dunbar v. Dunbar*, 190 U.S. 340, 353 (1903). The Supreme Court has suggested that this amendment was "merely declaratory of the true meaning and sense of" the amended statute, which had been construed to contain an implied exception to discharge for such obligations. *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904). As explained by the Court:

> At common law, a father is bound to support his legitimate children, and the obligation continues during their minority. We may assume this obligation to exist in all the states.… We think it was not the intention of Congress, in passing a bankruptcy act, to provide for the release of the father from his obligation to support his children by his discharge in bankruptcy.

*Dunbar*, 190 U.S. at 351.

While Illinois recognizes both a common law and statutory duty for parents to support their unemancipated minor children exists, *see, e.g., Clark v. Children's Memorial Hosp.*, 955 N.E.2d 1065 (Ill. 2011); Illinois Parentage Act of 2015, 750 ILCS 46/102 ("Illinois recognizes the right of every child to the physical, mental, emotional, and financial support of his or her parents.")[4], no similar duty for grandparents exist. *In re Gollahon*, 707 N.E.2d 735, 738 (Ill. App. Ct. 1999). "Parents, not grandparents," the appellate court held, "are responsible for the children's custody, care, education, nurture, and support." *Id.* (citing *In re Marriage of Lindsey*, 511 N.E.2d 198, 199-200 (Ill. App. Ct. 1987); *McVey v. Fredrickson*, 590 N.E.2d 996, 997 (Ill.

---

[4] Under the earlier Illinois Parentage Act of 1984, the duty was substantially similar: "Illinois recognizes the right of every child to the physical, mental, emotional and monetary support of his or her parents under this Act." 750 ILCS 45/1.1, *repealed by* P.A. 99-85, § 977.

App. Ct. 1992)).

Thus, to say, as the complaint does here, that the judgment debt at issue arises from services rendered by the guardian *ad litem* on behalf of the biological grandchild of the Debtors is not to allege the debt be owed to or recoverable by a *child* of the debtor or *such child's* parent, legal guardian, or responsible relative as is necessary to allege that it is a non-dischargeable domestic support obligation.

> iii.    *Even If the Carlsons Had Been Appointed Legal Guardians, their Granddaughter Is Not Their "Child."*

The Plaintiff appears to acknowledge that the statutory definition of "domestic support obligation" does not encompass debts owed to or recoverable by the debtor's grandchild. (*See* Reply Mem. 3, July 10, 2015, ECF No. 28 ("Plaintiff has acknowledged that no bankruptcy cases have supported Plaintiff's position to expand non-dischargeability of Guardian Ad Litem fees owed by grandparents such as the Defendants herein.").)  Instead, Mr. Raridon argues that the Carlsons' granddaughter should be considered their "child" for purposes of Section 101(14A) and 523(a)(5) because the state court's pre-petition order named them "co-guardians."[5] (*Id*. at 2.)

The adversary complaint provides few details about the guardianship or the related state court proceedings.  Even if this court were to look outside the four corners of the complaint and accept the allegations contained in Mr. Raridon's subsequent briefs, it is not apparent that the guardianship relationship at issue here constitutes a parent/child relationship for purposes of Section 523(a)(5).

In an unpublished 2006 decision, *Stewart v. Walker (In re Walker)*, the Third Circuit has

---

[5] The Plaintiff's Memorandum of Law suggests for the first time that Mr. Raridon's appointment as guardian *ad litem* was a result of the Carlsons' filing a petition for guardianship of their granddaughter. (Pl.'s Mem., ECF No. 15).  According to his memorandum, the "probate court" appointed the Carlsons to be temporary guardians on August 4, 2011 and appointed them as co-guardians of their granddaughter on July 9, 2012. (*Id*.)  The brief further indicates that the state court vacated its July 9 order on July 20, 2012, on the motion of the child's father only to again appoint them as co-guardians on April 30, 2013. (*Id*.)  None of this is alleged in the complaint.

held that guardian *ad litem* fees incurred during the course of an adoption proceeding may

constitute domestic support obligations. 190 Fed. Appx. 147.  With relatively little discussion the

court concluded that an adopted child of the debtor may be considered her "child", at least for

purposes of the pre-BAPCPA version of Section 523(a)(5), if the adoption was finalized before

either the petition date or the date the purported debt for support became due. *Id.*[6]  According to

Mr. Raridon's submissions in opposition to the motion to dismiss his complaint, the Carlsons

were appointed guardians before the petition date and before the state court made its fee award.

But neither the complaint nor his subsequent filings suggest that their guardianship appointment

here created a parent/child relationship under Illinois law or for purposes of bankruptcy.

This court has found only three published bankruptcy decisions that consider whether a

state law guardianship can establish a parent/child relationship sufficient to create a domestic

support obligation for purposes of Section 523(a)(5).  Two of these cases hold that it cannot; the

third concludes otherwise.[7]  In *Ceconi v. Uriarte (In re Uriarte)*, a bankruptcy court found that a

pre-petition award of fees against the debtor and in favor of a guardian *ad litem* did not constitute

a support obligation under Section 523(a)(5). 215 B.R. 669 (Bankr. D.N.J. 1997).  That case

involved a New Jersey proceeding in which the debtor had been appointed guardian of two

unrelated children.  First, the court noted that while the operative phrase "child of the debtor"

found in the Bankruptcy Code "clearly suggested [a] parental relationship," the applicable New

Jersey statute uses the more remote terms of "guardian and ward" rather than "parent and child"

with regard to the obligations of a guardian. *Id*. at 673 (citing N.J. Stat. Ann. § 3B:12-51 to

---

[6] Because the adoption was finalized before both the petition date and the date the fees were awarded, the court
stated that it did not need to "pick between the two possible dates here." *Id.*

[7] A fourth case involved grandparents but not a formal guardianship.  In *Tucker v. Oliver*, the court held that an
attorney's fee awarded against grandparents in a mere visitation dispute with the child's parent did not constitute a
"domestic support obligation" under Section 101(14A). 423 B.R. 378 (W.D. Okla. 2010).  The court noted that a
"determination of a grandparent's visitation rights does *not* necessarily impact a determination of support, hence it is
outside the rationale employed by" cases that had expanded beyond the literal text of Section 523(a)(5) or 101(14A).
*Id*. at 381.

3B:12-55).   In addition, New Jersey law defines "a 'parent' as 'a natural parent or parent by previous adoption.'" *Id.* (quoting N.J. STAT. ANN. § 9:2-13).  Finally, under New Jersey law the guardian is not required to financially support her ward. *Id*. at 674 ("A guardian has the 'power and responsibilities of a parent who has not been deprived of custody of his minor and unenmancipated child, *except that a guardian is not legally obligated to provide for the ward from his own funds.*'") (quoting N.J. STAT. ANN. § 3B:12-51 (emphasis added)).   The court concluded that if a debtor "is not legally obligated to support the children, the obligation to pay their guardian ad litem is not an obligation for their support under section 523(a)(5)." *Id*.

The court in *Eliason v. Sullivan (In re Sullivan)* similarly found that guardian *ad litem* fees awarded against the debtor in a Connecticut probate proceeding did not constitute domestic support obligations for purposes of Section 523(a)(5). 234 B.R. 244 (Bankr. D. Conn. 1999).  In that case the debtor was awarded custody of her grandchildren after their mother's death. *Id*. at 245.  The court concluded that under Connecticut law a "guardian of a minor child has no legal obligation of support for that child." *Id*. at 246 (quoting *Favrow v. Vargas*, 647 A.2d 731 (Conn. 1994)).  Because the debtor had no legal obligation to support the children, the guardianship fees were not covered by Section 523(a)(5). *Id*.

In contrast, the bankruptcy court in *Epstein v. Defilippi (In re Defilippi)* determined that an award of guardian *ad litem* fees against the debtor in a "parental rights order" pursuant to Maine law to be non-dischargeable. 430 B.R. 1 (Bankr. D. Me. 2010).  The debtor there was the child's grandparent.  Referencing Maine law and the state court's recognizition of the debtors as the "*de facto parents*," the bankruptcy court emphasized that the "state court judgment provided that the 'parental rights and responsibilities of [the child's biological parents] *are not terminated but are allocated to the de facto parents.*'" *Id*. at 4.

Although the complaint at issue is vague as to the specifics, Mr. Raridon and the Carlsons appear to agree that the underlying proceeding was a petition for guardianship commenced by the Carlsons pursuant to 755 ILCS 5/11-5. (*See* Pl.'s Mem. 5, ECF No. 15; Debtor's Mem. 5, June 8, 2015, ECF No. 26.)  This statute provides that "[u]pon the filing of a petition for the appointment of a guardian or on its own motion, the court may appoint a guardian of the estate or of both the person and estate, of a minor, or may appoint a guardian of the person only of a minor or minors, as the court finds to be in the best interest of the minor or minors." 755 ILCS 5/11-5(a).

The Carlsons argue that because the relevant provision for appointment of guardians appears in the Illinois Probate Act, Illinois Compiled Statutes Chapter 755, rather than in the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5,[8] the guardian *ad litem* fees cannot constitute a domestic support obligation.  However, whether or not a debt is non-dischargeable as "a maintenance obligation is a matter of federal bankruptcy, rather than state, law" and the court is "not bound by the labels attached to the obligation." *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972 (7th Cir. 1998).  The mere fact that the guardianship provision appears in a chapter of the Illinois Statutes entitled "Estates" rather than the chapter entitled "Families" is not dispositive as to whether the obligation is in the nature of "support" or owed to a "child of the debtor" as these terms are used in Section 101(14A) of the Bankruptcy Code.  It is northworthy that the Illinois chapter on "Families" contains several references to the Illinois Probate Act.  For example, the Emancipation of Minors Act permits a "guardian" to object to an order emancipating a minor. 750 ILCS 30/9(a).  That provision, which appears in the "Families" chapter, defines a "guardian" as "any person, association or agency appointed guardian of the person of the minor under the Juvenile Court Act, the Juvenile Court Act of 1987, the 'Probate

---

[8] Which is located in Chapter 750 ("Families") of the Illinois Compiled Statutes.

Act of 1975', or any other statute or court order." 750 ILCS 30/3-4.

While the location or labelling of guardianship provisions found in state statutes is not necessarily determinative, "state law may inform the nature of the interest." *In re Taylor*, 737 F.3d 670, 677 (10th Cir. 2013) (finding that debt for overpayment of support did not qualify as a domestic support obligation). Like the guardianship provision examined in *Uriarte*, the Illinois statutory guardianship provision uses the terminology of "guardian" and "ward" rather than "child" or "parent" to describe the relationship. Even more telling, relevant Illinois statutes clearly distinguish between a "parent, adoptive parent or adjudicated parent" on the one hand and a "guardian" on the other. The Illinois Parentage Act of 2015, for example, defines "parent" and "child" to include biological and adopted children, but does not include in this definition the ward of a guardian.[9] While Article 8 of the Act provides for child support orders based on "parentage," it does not include guardianship as a basis for such orders. 750 ILCS 46/801. Similarly, the statute's predecessor, the Illinois Parentage Act of 1984, defined the "parent and child relationship" to be "legal relationship existing between a child and his *natural or adoptive parents* incident to which the law confers or imposes rights, privileges, duties, and obligations."

---

[9] (a) The parent-child relationship is established between a woman and a child by:
    (1) the woman having given birth to the child, except as otherwise provided in a valid gestational surrogacy contract;
    (2) an adjudication of the woman's parentage;
    (3) adoption of the child by the woman;
    (4) a valid gestational surrogacy contract under the Gestational Surrogacy Act or other law; or
    (5) an unrebutted presumption of the woman's parentage of the child under Section 204 of this Act.
 (b) The parent-child relationship is established between a man and a child by:
    (1) an unrebutted presumption of the man's parentage of the child under Section 204 of this Act;
    (2) an effective voluntary acknowledgment of paternity by the man under Article 3 of this Act, unless the acknowledgment has been rescinded or successfully challenged;
    (3) an adjudication of the man's parentage;
    (4) adoption of the child by the man; or
    (5) a valid gestational surrogacy contract under the Gestational Surrogacy Act or other law.
 (c) Insofar as practicable, the provisions of this Act applicable to parent-child relationships shall apply equally to men and women as parents, including, but not limited to, the obligation to support.

750 ILCS 46/201.

750 ILCS 45/2, *repealed by* P.A. 99-85, § 977 (emphasis added).[10]   Thus, the language and structure of relevant Illinois statutes strongly suggest that the relationship—and attendant rights and responsibilities—to a natural or adopted child is fundamentally different from the relationship between a guardian and her ward.

Mr. Raridon attempts to distinguish *Uriarte* and *Sullivan* on the basis that those courts found that there was no legal obligation for the guardian to financially support the child under the relevant New Jersey and Connecticut statutes.  He argues that under the Illinois Probate Act the "guardian of the person shall have the custody, nurture and tuition and shall provide education of the ward." 755 ILCS 5/11-13.   But this argument is not sufficient to save his complaint.  First, it does not allege how or even whether his fees were incurred for the custody, nurture or education of the grandchild.  Further, it ignores the fact that the obligations set forth in Section 5/11-13 of the Illinois' Probate Act are significantly narrower than the duty of "support" owed to a child set out in the Marriage and Dissoluition of Marriage Act (and elsewhere). 750 ILCS 5/505(a).  The Illinois Parentage Act "recognizes the right of every child to the physical, mental, emotional, and financial support of his or her parents." 750 ILCS 46/102.[11]   In contrast, the Probate Act provides only that the guardian shall have the custody, nurture and tuition" of the ward and "shall provide education of the ward," 755 ILCS 5/11-13, and even this obligation is limited.  According to the Probate Act, the failure to provide education to the ward results not in a financial debt but rather the possible termination of custody. 755 ILCS 5/11-13(a) ("If the ward's estate is insufficient to provide for the ward's education and the guardian of his person

---

[10] Similarly, the Illinois Marriage and Dissolution of Marriage Act speaks in terms of "parent" and "child" when describing a parent's obligation to support a child.  For example, 750 ILCS 5/505(a) states that: "the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for the support of the child, without regard to marital misconduct." 750 ILCS 5/505(a).

[11] Under the earlier Illinois Parentage Act of 1984, the duty was substantially similar: "Illinois recognizes the right of every child to the physical, mental, emotional and monetary support of his or her parents under this Act." 750 ILCS 45/1.1, *repealed by* P.A. 99-85, § 977.

fails to provide education, the court may award the custody of the ward to some other person for the purpose of providing education.")[12] *See, e.g., In re Terrell L.*, 859 N.E.2d 113 (Ill. App. Ct. 2006).

This present case is readily distinguishable from *DeFilippi.* The complaint does not allege or suggest that a court has adjudicated the Carlsons to be either the parents or *de facto* parents of their granddaughter. Nor does it allege that the "parental rights and responsibilities" of the granddaughter's parents had been "allocated" to the Carlsons. Under Illinois law, an order merely appointing a guardian, without more, does not terminate the parental rights of the natural parents. The Illinois Supreme Court has held that the parental obligation of support terminates in three situations related to guardianship or adoption: (1) upon the entry of a judgment of adoption, (2) when a court enters an order terminating parental rights if the child is in the process of being adopted, or (3) when a court appoints a guardian and specifically authorizes the guardian of the person of the minor to consent to adoption. *Ill. Dept. of Healthcare & Fam. Servs. v. Warner*, 882 N.E.2d 557, 563 (Ill. 2008) ("An order so empowering the guardian to consent to adoption relieves the parents of all parental responsibility.").[13] "[I]t is the order authorizing the guardian to consent to adoption that triggers the termination of parental responsibility." *Id.*

The complaint does not allege that the state court entered an order empowering the Carlsons to consent to adoption of their granddaughter. Nor is that suggested in the court orders appointing the Carlsons guardians that are attached to Mr. Raridon's brief. (Pl.'s Mem., ECF No. 15.) Rather the complaint references the September 20, 2013 order that states the child's father

---

[12] Moreover, while the Probate Act imposes certain express fiduciary obligations upon the guardian of a minor's *estate*, and the guardian of the estate is required to post a bond, the statute does not contain a similar obligation for the guardian of the person. 755 ILCS 5/11-13(b) (guardian of estate "shall manage the estate frugally and shall apply the income and principal of the estate so far as necessary for the comfort and suitable support and education of the ward"). This again suggests that the obligations of a guardian of the person are not primarily financial.

[13] In *Warner*, an order terminating an adjudicated father's parental rights was found not to have terminated his obligation to pay child support to the Department of Children and Family Services, which had custody and guardianship of the children. 882 N.E.2d 557.

is jointly and severally liable for the guardian *ad litem* fees. (Compl. ¶ 5.)  This, if anything, suggests that parental support obligations had not been terminated.

Thus, upon fairly construing what facts are alleged and may be reasonably inferred from this pleading, the complaint cannot be found to plausibly allege that the Carlsons' granddaughter is their "child" for purposes of Section 523(a)(5).

*iv.    Policy Considerations Do Not Mandate Exception from Discharge.*

Lastly, the Plaintiff argues that guardians *ad litem* "are crucial in matters pertaining to minors whether the forum is a guardianship or custody proceeding," that the "intervention of grandparents into the lives of their grandchildren to assist in their upbringing" is more common now than before, and that the discharge of fees may "have a chilling effect" on those who would otherwise volunteer as a guardian *ad litem*. (Reply Mem. 4-5, ECF No. 28).  While the importance of these concerns are not disputed, their invocation here, without more, is insufficient to sustain his pleading.

Exceptions to discharge are generally construed narrowly to protect a debtor's right to a "fresh start." *See, e.g., Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 963 (7th Cir. 2004) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).  On the other hand, by enacting Section 523(a)(5), Congress "has overridden the general bankruptcy policy in which exceptions to discharge are construed narrowly" in favor of a "longstanding corresponding policy of protecting a debtor's spouse and children when the debtor's support is required." *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998).  Pursuant to this policy, "[u]nless positively required by direct enactment the courts should not presume a design upon the part of Congress, in relieving the unfortunate debtor, to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his

children." *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904).   Thus "a § 523(a)(5) exception from discharge is construed more liberally than other § 523 exceptions." *Crosswhite*, 148 F.3d at 882.

But it is one thing to interpret an ambiguous statute in a way that best supports a long-standing policy of protecting a debtor's spouse's and children's right to support, and quite another to expand such policy, through judicial interpretation, to protect a broader group than spouses and children.   Arguments "about what makes for good public policy should be directed to Congress; the judiciary's job is to enforce the law Congress enacted, not write a different one that judges think superior." *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1127-28 (7th Cir. 2003) (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 460-62 (2002)).   Indeed, the policy issues invoked by the Plaintiff are complex and apparently not settled.   As noted by the Connecticut Supreme Court, for example, in ruling that Connecticut law imposes no financial obligation on non-parent guardians: "If a person, by accepting the obligations of the guardian of a minor child were also held to have the legal responsibility to support the child, the law would discourage the acceptance of such appointment. Such a result would, in the long run, undermine rather than further the interests of minor children." *In re Sullivan*, 234 B.R. 244, 247 (Bankr. D. Conn. 1999) (quoting *Favrow v. Vargas*, 647 A.2d 731 (Conn. 1994)).   Congress apparently having chosen not to extend the reach of section 523(a)(5) to support owed to those who are not children of the debtor, such as to grandchildren or to wards of an appointed legal guardian, this court should not do so.

## CONCLUSION

For the reasons stated above, the adversary complaint fails to allege facts to plausibly suggest that the Carlsons' granddaughter is their "child" or that the debt owed Plaintiff for guardian *ad litem* fees is in the nature of alimony, maintenance, or support of a "child of the

debtor," so as to except the judgment debt from discharge.  Accordingly, the Debtors' motion to dismiss will be granted without prejudice.  The Plaintiff is granted 21 days to file an amended complaint, if desired, or else the adversary proceeding will be closed.

A separate order will be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.


DATE:   January 25, 2016        ENTER:

                                Thomas M. Lynch
                                United States Bankruptcy Judge